## Morgan, By Next Friend, etc. v. Wooton.

(Decided October 1, 1920.)

### Appeal from Perry Circuit Court.

Appeal and Error—Finding of Chancellor.—Evidence examined and held to sustain chancellor's findings upon questions of mental capacity, undue influence and adequacy of price in suit to cancel deed.

F. J. EVERSOLE, J. B. EVERSOLE and HOGG & JOHNSON for appellants.

MILLER & WHEELER, J. W. CRAFT, BAILEY P. WOOTON and WOOTON & MORGAN for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The appellant, Sarah Morgan, suing by her next friend, Emma Gross, instituted this action on the 8th day of March, 1912, against E. C. Wooton to cancel a deed for about five acres of land made to him by Sarah Morgan on the 16th day of April, 1908.

It is alleged in the petition that on that date Sarah Morgan was the owner in fee simple of the tract of land; that she was without mental capacity to make the conveyance; that same was procured by the defendant by

fraud and undue influence and that the consideration therefor was grossly inadequate.

The defendant for answer in addition to traversing the allegations of the petition pleaded that at the time the deed was made, plaintiff owned only a remainder interest in the property; that he owned a life estate therein and that if the plaintiff was, at the time of the execution and delivery of the deed, without mental capacity, he did not know and had no means of knowing it.

A denial by reply of the affirmative allegations of the answer completed the issues.

Upon a trial, the petition was dismissed and plaintiff appeals. The special judge who tried the case delivered a written opinion in which he reviewed the evidence and found as facts that at the time the deed complained of was executed and delivered, the plaintiff owned only a remainder interest and the defendant a life interest in the land in controversy; that the consideration paid was not inadequate; that she was not without mental capacity to make the deed and that the defendant was not guilty of fraud or undue influence in procuring it.

Upon each of these disputed questions the evidence, which is quite voluminous, fully sustains the court's finding.

1. In 1906, two years previous to the execution of the deed complained of, plaintiff conveyed the land in controversy to her daughter, Kate Wooton, wife of defendant, by a deed which upon its face is absolute and which is not attacked in this action. From the date of that deed, defendant and his wife lived upon and occupied the land in controversy as a homestead until early in 1907 when the latter died intestate. Mrs. Wooton was survived by one child, a daughter who died in infancy some five or six months after her death. Defendant continued in possession of the land after the death of his wife; and, after the death of his daughter, Charles Morgan, acting for plaintiff, demanded possession of him which he refused to surrender, asserting a right to homestead therein. It is therefore clear that Mrs. Wooton died the owner and in possession of the land in controversy, that under our statutes of descent and distribution, her title descended to her daughter subject to defendant's right of homestead or dower, as he might elect; and, that upon the death of the daughter in infancy, plaintiff, her maternal grandmother, inherited the land but subject, of course, to defendant's asserted right of homestead therein.

2. There is no evidence whatever to show, that, from the death of defendant's daughter until the deed in controversy was made, plaintiff and defendant even so much as met or spoke to each other. There seems rather to have been an estrangement between them since shortly after the death of Mrs. Wooton. All of the transactions leading up to the conveyance by plaintiff to defendant were carried on between the defendant and Charles Morgan, acting for his mother. There is no evidence therefore of undue influence or fraud practiced upon the plaintiff by defendant; nor is there any evidence whatever that Charles Morgan was representing or acting for the defendant in persuading or coercing his mother to make the conveyance, or that the defendant knew that Charles Morgan, as he now claims, compelled the plaintiff over her objections to execute and deliver same.

3. The evidence is overwhelming that the property at the time the conveyance was made was not worth more than $1,500.00. There was a mortgage on it for $209.00 which defendant paid and in addition he paid to the plaintiff $400.00 in cash and possibly $150.00 in personal property. He was then about thirty-one years of age and according to the life tables his life interest in the property upon the valuation of $1,500.00 was about $1,050.00. It is therefore apparent that even upon this valuation, he paid to the plaintiff the full value of her remainder interest in the property. That this valuation was in excess of what the defendant and plaintiff then considered the property worth is evident from the fact that when plaintiff through her son, Charles, demanded possession of him, defendant offered to sell and convey his life interest to her upon a valuation of $1,000.00 and she declined to purchase on that basis.

4. It is only on the question of mental capacity that there is any real conflict in the evidence. Upon this question ten witnesses testified for the plaintiff and gave as their opinion that at the time she made the deed complained of she did not have sufficient mental capacity to understand the effect of the deed, or as some of the witnesses state, to know the value of the property she was conveying. Of these ten witnesses, all are related to plaintiff except one, a physician whose evidence is entirely discredited.

For the defendant, besides himself, twelve witnesses testified that in their judgment Mrs. Morgan was of sound mind at the time the deed was made, and that they had never heard her sanity questioned until this

controversy arose. All of these witnesses are prominent business men of the community. Two of them are physicians, one a relative of the plaintiff and the other her family physician and next door neighbor during the period it is claimed she was mentally incapacitated. It is certainly manifest that we could not say that this evidence does not sustain the chancellor's finding.

Wherefore the judgment is affirmed.